## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CONNECTICUT GENERAL LIFE          :
INSURANCE COMPANY, ET AL.         :
  plaintiffs,                     :
                            :
        v.                         :   Civil No. 3:14-CV-1859(AVC)
                            :
TRUE VIEW SURGERY CENTER          :
ONE, LP, ET AL.                   :
  defendants.                     :

### RULING ON THE DEFENDANTS' MOTION TO DISMISS

This is an action for declaratory and injunctive relief and damages in which the plaintiffs, Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (hereinafter collectively "Cigna"), allege that the defendants, True View Surgery Center One, LP; Oprex Surgery (Houston), LP; LCS Surgical Affiliates, LP; Pasnar Houston, LLC; Oprex Surgery (Beaumont), LP; Oprex ASC Beaumont, LLC; and Altus Healthcare Management, LP (hereinafter collectively the "surgical centers"), defrauded Cigna using fee-forgiving billing practices.  It is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and common law tenets concerning unjust enrichment, fraud, and tortious interference with contract.

The surgical centers have filed the within motion to dismiss all causes of action in the amended complaint pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of

Civil Procedure, on the grounds of lack of standing, failure to state a cause of action, and failure to plead fraud with sufficient particularity.

The issues presented are: 1) whether Cigna has constitutional and statutory standing; 2) whether Cigna's amended complaint provides fair notice under Fed. R. Civ. P. Rule 8; 3) whether Cigna seeks appropriate relief under ERISA § 502(a)(3); 4) whether Cigna's state claims are preempted under ERISA; 5) whether the amended complaint sufficiently pleads fraud with particularity; and 6) whether Cigna has stated a claim under CUTPA.

The court concludes: 1) Cigna has constitutional and statutory standing; 2) Cigna's amended complaint provides fair notice under Fed. R. Civ. P. Rule 8; 3) Cigna seeks appropriate relief under ERISA § 502(a)(3); 4) Cigna failed to state a claim under CUTPA; 5) Cigna's state law claim of fraud is not preempted by ERISA; 6) Cigna's state law claim of tortious interference with contract is preempted by ERISA; and 7) Cigna's amended complaint sufficiently pleads fraud with particularity under Fed. R. Civ. P. Rule 9(b).

For the reasons that follow, the motion to dismiss (doc. no. 51) is GRANTED IN PART and DENIED IN PART.

**FACTS**

An examination of the amended complaint reveals the following:

Cigna is a Connecticut-based managed care company that serves as a claims administrator and/or insurer.  Cigna provides administrative services to employee health and welfare benefit plans (the "plans"), which permit individual plan members and their beneficiaries to seek health services or treatment at either "in-network" or "out-of-network" facilities.  As plan administrator, Cigna then reimburses members for the services performed at these facilities, subject to the requirement that members satisfy applicable cost-sharing obligations in the form of deductibles, copayments, and coinsurance.  Such "covered expenses" satisfy "all terms and conditions of the plan, including that the expense is 'incurred' by or for a covered person . . . that the expense is medically necessary, and that it is included on the list of covered expenses appearing in the summary plan description and is not excluded from coverage."  Cigna reimburses only those covered expenses incurred and which the plan member is obligated to pay.

Cigna has entered into agreements with "in-network" facilities to provide access to Cigna's members in exchange for lower, fixed service rates.  While plan members are allowed to seek treatment from out-of-network providers, they must pay

higher cost-share amounts for otherwise similar less expensive treatment available in-network.  The purpose of requiring members to bear greater cost-share burdens for out-of-network care is to "sensitize members to the true costs" of healthcare services and to incentivize members to seek treatment in-network.

Cigna provides reimbursement for out-of-network claims in one of three ways.  First, Cigna's repayment obligation can be calculated by the "maximum reimbursable charge," which is "the lesser of (a) the provider's normal charge for a similar service (typically deemed to be the amount billed) or (b) either a specified percentile of charges made by other providers of such services in the region or a specified percentile of the reimbursement rate that Medicare provides for such services in the same geographic area."  Second, Cigna contracts with third-party vendors who then "negotiate with providers and facilities to reprice their out-of-network claims."  These providers and facilities agree to "accept a preordained discount percentage to out-of-network claims and make the discount available to insurers like Cigna."  Third, the billed amount is not repriced at all.  No matter how the payment is calculated, however, "the billed amount is relevant and material to the determination of the 'allowed amount,' which is the amount that Cigna determines to be covered by the plan."

The surgical centers are out-of-network providers with whom Cigna has no contractual relationship.  They engaged in a systematic fee-forgiving scheme intended to circumvent the plans' cost-share obligations and defraud Cigna.  Specifically, the surgical centers lured members to their out-of-network facilities by offering less expensive services and waiving cost-share obligations.  Then, they billed Cigna for the full cost of treatment at "grossly inflated charges" that misrepresented the true cost of services provided and did not disclose to Cigna their practice of waiving members' cost-share obligations.  Consequently, Cigna has made approximately $17 million in overpayments as a result of the surgical centers' allegedly fraudulent conduct.

Three hundred and sixteen plans are at issue in this case. Two hundred and twenty-eight of the plans are administrative services only plans ("ASO") and are self-funded by employers. Seventy-four of the plans are designated as fully-insured plans and are funded by Cigna.  The remaining fourteen minimum premium plans require Cigna to reimburse claims paid above a certain threshold.  A majority of the plans are governed by ERISA, with exceptions for those plans sponsored by governmental or church employers.  Cigna brings this action on its own behalf and in its capacity as a claims administrator and fiduciary for all plans at issue.

**STANDARD**

**I.   Rule 12(b)(1) - Subject Matter Jurisdiction**

A court must grant a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) where a plaintiff has failed to establish subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal for lack of subject matter jurisdiction under rule 12(b)(1) is proper "when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); see Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 882 (2d Cir. 1995) (recognizing that "[d]efects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings.").  Once subject matter jurisdiction is challenged, "a plaintiff . . . has the burden of proving by a preponderance of the evidence that it exists."  Makarova, 201 F.3d at 113.  In analyzing a motion to dismiss pursuant to rule 12(b)(1), the court must accept all well pleaded factual allegations as true and must draw inferences in favor of the plaintiff.  Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001).  Where a defendant challenges the district court's subject matter jurisdiction, the

court may resolve disputed factual issues by reference to evidence outside the pleadings, such as affidavits.  Makarova, 201 F.3d at 113.

## II.  Rule 12(b)(6) - Failure to State a Claim

A court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to establish a claim upon which relief may be granted.  Such a motion "assess(es) the legal feasibility of the complaint, [it does] not . . . assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When ruling on a 12(b)(6) motion, the court must "accept the facts alleged in the complaint as true, and draw all reasonable inferences in favor of the plaintiff."  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court may consider only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of

which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

## III.   Rule 9(b) - Fraud with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure requires a complaint alleging fraud to meet a heightened pleading standard: "In alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The second circuit has interpreted this rule to require that a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).  Put differently, "a complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013) (alteration in original) (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004)) (internal quotation marks omitted).

In addition to providing a heightened pleading standard,
Rule 9(b) provides that "[m]alice, intent, knowledge, and other
conditions of a person's mind may be alleged generally."  Fed.
R. Civ. P. 9(b).  The second circuit has recognized that "the
requisite intent of the alleged speaker of the fraud need not be
alleged with great specificity . . . for the simple reason that
'a plaintiff realistically cannot be expected to plead a
defendant's actual state of mind.'"  Chill v. Gen. Elec. Co.,
101 F.3d 263, 367 (2d Cir. 1996) (citation omitted) (quoting
Conn. Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.
1987)).

## DISCUSSION

### I.  ERISA

#### A. Standing[1]

##### i. Statutory Standing

The surgical centers argue that as a claims administrator,
Cigna is not a fiduciary of the plans and has failed, therefore,
to allege statutory standing under ERISA § 502(a)(3).
Specifically, the surgical centers argue that "if a claims
administrator does not exercise discretion, but merely follows

---

[1] At the outset, the court addresses the surgical centers' argument that the
court should dismiss the allegations in the complaint for failure to publicly
identify the plans at issue.  On March 27, 2015, Cigna filed an amended
complaint along with a motion to seal the attached exhibits.  On March 30,
2015, the court granted the motion to seal.  On March 31, 2015, Cigna filed
the unredacted exhibits.  The surgical centers are free to make a motion to
the court to unseal these exhibits.  The court's order granting the motion to
seal is not grounds for dismissal, however.

instructions from the plan sponsor, it is *not* a fiduciary."
Cigna responds that the amended complaint "makes it clear that
Cigna is an ERISA fiduciary" authorized to file a lawsuit under
ERISA § 502(a)(3).

ERISA § 502(a)(3) permits a "fiduciary" to bring a civil
action to redress violations of the terms of an ERISA plan.  29
U.S.C. § 1132(a)(3); see also Gerosa v. Savasta & Co., 329 F.3d
317, 320 (2d Cir. 2003).  For ERISA purposes:

> A person is a fiduciary with respect to a plan to the
> extent (i) he exercises *any* discretionary authority or
> discretionary control respecting the management of
> such plan or exercises any authority or control
> respecting the management or disposition of its
> assets, (ii) he renders investment advice for a fee or
> other compensation, direct or indirect, with respect
> to any moneys or other property of such plan, or has
> any authority or responsibility to do so, or (iii) he
> has *any* discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphases added); see also Varity Corp.
v. Howe, 516 U.S. 489, 498 (1996).  "ERISA . . . defines
'fiduciary' not in terms of formal trusteeship, but in
*functional* terms of control and authority over the plan, thus
expanding the universe of persons subject to fiduciary duties."
Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993) (citation
omitted).

The amended complaint alleges that the plan terms give
Cigna discretionary authority by authorizing Cigna to interpret
and apply terms in review of claims, determine whether a person

is entitled to benefits under the plan, review appeals based on denial of claims, and take action to recover improper payments made on behalf of the plans.  At this stage of the litigation, the court concludes that these allegations sufficiently plead that Cigna is a fiduciary for all of the plans at issue and, therefore, Cigna has met the standing requirements contained in ERISA § 502(a)(3).

### ii. Article III Standing

The surgical centers next argue that Cigna lacks Article III standing to sue.  Specifically, they contend that Cigna itself has not suffered injury with respect to any past or future benefit payments made by the plans' funds as Cigna is merely the claims administrator for the plans.  The surgical centers further argue that Cigna has failed to identify any plan terms that provide Cigna the authority to sue on the plans' behalf.  Cigna responds that "the amended complaint makes clear that Cigna is an ERISA fiduciary, both for its fully-insured plans *and in its capacity as the claims administrator for self-funded plans*."  Therefore, Cigna contends that it has Article III standing to bring these claims as a fiduciary.

As discussed above, Congress has granted fiduciaries statutory standing to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate

equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter of the terms of the plan."  29 U.S.C. § 1132(a)(3); see also Sereboff v. Mid. Atl. Med. Servs., 547 U.S. 356, 361 (2006).  The Supreme Court has recognized that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." Warth v. Seldin, 422 U.S. 490, 514 (1975).  It is well-settled, however, that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Raines v. Byrd, 521 U.S. 811, 820 n.3 (1997); see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 201 (2d Cir. 2005) (noting that "statutory standing will not suffice to substitute for Article III standing.").

Federal courts may decide only "cases" and "controversies." See Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 381 (2d Cir. 2000); see also Sierra Club v. Morton, 405 U.S. 727, 731-32 (1972) ("Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue.").  At a minimum, Article

III standing requires that "the plaintiff must have suffered an 'injury in fact'——an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).  The injury in fact must be fairly traceable to the defendant's conduct and likely to be redressed by the requested relief.  Id. at 560-61.

Here, the court concludes that Cigna has Article III standing to bring this case.  Cigna has a concrete and particularized interest in paying only valid claims to ensure its members' financial interests are protected.  See Gerosa v. Savasta & Co., 329 F.3d 317, 320 (2d Cir. 2003) ("ERISA places great responsibilities upon the fiduciaries of a plan to protect the interests of the plans' beneficiaries.").  Moreover, the alleged billing practices personally affected Cigna.  Cigna has expended its own time and resources in investigating the surgical centers' billing practices "through post-procedure patient surveys and patient interviews," and by corresponding with the surgical centers regarding their billing practices. See Lujan, 504 U.S. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").  The court concludes that Cigna has met the constitutional requirements of Article III standing.

**B. Notice**

The surgical centers argue that Cigna's failure to identify the specific plan terms at issue violates Rule 8 of the Federal Rules of Civil Procedure.  Specifically, the surgical centers contend that all plan terms are not uniform and that the amended complaint "cherry-picked [a] handful of the plans at issue" to represent all of the plans.  Cigna responds that the amended complaint gives clear and fair notice of its allegations that the "defendants have unlawfully submitted claims for reimbursement to Cigna, which do not represent defendants' actual charges to Cigna's members" in violation of the plan terms also enumerated in the amended complaint.

Rule 8 requires a complaint to provide only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2); <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Although a complaint need not provide detailed factual allegations to survive a motion to dismiss pursuant to Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.  Further, "[a]sking for plausible grounds . . . does not impose a

14

probability requirement at the pleading stage; it simply calls
for enough fact to raise a reasonable expectation that discovery
will reveal evidence of illegal[ity]."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 556 (2007); see also Ideal Steel Supply
Corp. v. Anza, 652 F.3d 310, 323-24 (2d Cir. 2011).

In this case, the amended complaint provides the terms of
the plans that specifically prohibited the surgical centers'
conduct.  It notes that "for a benefit to be payable, the charge
must be a 'covered expense,' . . . including that the expense be
'incurred by or for a covered person.'"  These covered expenses
are, as the amended complaint alleges, "subject to the
applicable cost-share requirements of the plan, including
deductibles and coinsurance."  The amended complaint further
explains: "Cigna's obligation to reimburse a plan member is
limited to the expenses actually incurred by the member.  If the
member has no obligation to pay, then Cigna has no obligation to
pay."

The court concludes that the amended complaint provides
fair notice of Cigna's claims and the grounds upon which it
rests.  It sufficiently alleges that if a plan member does not
incur a covered expense——that is, if a covered expense is waived
or significantly reduced by a healthcare provider——the member
has not truly incurred a reimbursable charge.  Contrary to the
surgical centers' contentions, the amended complaint states that

15

all plans were subject to the above cost-sharing obligations.
It is, therefore, unnecessary for Cigna to attach all three
hundred fifteen plans to the complaint, as doing so could
contradict Rule 8's requirement that the complaint provide a
short and plain statement of the claim.  Even if the amended
complaint does not allege otherwise uniform plan terms, it meets
the Rule 8 requirements.  Moreover, the amended complaint
adequately and succinctly alerts the surgical centers of the
violated plan terms and provides proof of hundreds of processed
claims reflecting discrepancies between the amounts billed and
the amounts reimbursed.  It also provides the corresponding
claim number for each transaction thereby facilitating easier
access to the files at issue in the defense preparation.

### C. Appropriate Equitable Relief

The surgical centers argue that ERISA § 502(a)(3) allows
for only equitable relief and that Cigna's claim for money
damages is legal in nature.  They further contend that the
language in Cigna's plans does not create an equitable lien by
agreement.  Cigna responds that "the plans at issue created a
lien by agreement through language indicating that '[w]hen an
overpayment has been made by CIGNA, CIGNA *will have the right at
any time to . . . recover that overpayment* from the person to
whom or on whose behalf it was made.'"  Because the plan terms

create an equitable lien by agreement, Cigna contends, its suit seeks appropriate relief under ERISA § 502(a)(3).

ERISA § 502(a)(3) provides for a fiduciary to bring a civil action "(a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (b) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  Therefore, Cigna must seek, *inter alia*, "appropriate equitable relief" in order to state a claim under ERISA § 502(a)(3).

ERISA § 502(a)(3) does not permit claims for legal relief. See Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209-10 (2002) (noting that "Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly"). Whether relief "is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."  Id. at 213 (alteration in original) (quoting Reich v. Cont'l Cas. Co., 33 F.3d 754, 756 (7th Cir. 1994)).

The Supreme Court has noted that "one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'"  Sereboff v. Mid. Atl. Med. Servs., Inc., 547 U.S. 356, 362 (2006) (quoting Knudson, 534 U.S. at 213).  It has further stated that "for restitution to lie in

17

equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 215 (2002).  In rejecting a claim seeking compensatory damages, the Court explained that appropriate equitable relief under ERISA § 502(a)(3) referred to only "those categories of relief that were *typically* available in equity."  Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993).  Therefore, whether equitable relief is available under ERISA § 502(a)(3) depends on whether the remedy sought would historically have been characterized as equitable "[i]n the days of the divided bench" of law and of equity.  See Knudson, 534 U.S. at 212.

Here, the amended complaint alleges that Cigna remitted the overpayments to the surgical centers.  It also identifies the bank account numbers to which Cigna sent the overpayments and states that Bilal Saeed, an executive "controller" for the surgical centers, submitted a direct deposit authorization form to Cigna.  The court first concludes that Cigna's claim is equitable in nature.  Cigna seeks specific funds——overpayments resulting from the defendants' billing practices——in a specific amount——$17 million in total overpayments.  The court next concludes that the basis for the claim is also equitable, as Cigna seeks to enforce an equitable lien by assignment, that is,

18

the overpayments that the surgical centers received.  Put
differently, Cigna seeks to impose an equitable lien on
particular property rather than impose personal liability on the
surgical centers.  Although the surgical centers maintain that
the alleged overpayments cannot be "traced to particular funds
or property" in their possession, the Supreme Court has held
that no tracing requirement applies to equitable liens by
agreement or assignment.  Sereboff v. Mid. Atl. Med. Servs.,
Inc., 547 U.S. 356, 364-65 (2006); see also Thurber v. Aetna
Life Ins. Co., 712 F.3d 654, 664 (2d Cir. 2013) ("When an ERISA
plan creates an equitable lien by agreement between the insurer
and the beneficiary, the insurer's ownership of the overpaid
funds is established regardless of whether the insurer can
satisfy strict tracing rules.").  Taken together, the court
concludes that the amended complaint seeks "appropriate
equitable relief" for Cigna to state a claim under ERISA §
502(a)(3).

### D. Administrative Process

The surgical centers next argue that "Cigna seeks to
retroactively deny benefit claims it paid," which falls squarely
within the definition of an "adverse benefit determination."
The surgical centers further contend that Cigna failed to comply
with ERISA's notice-and-appeal process before issuing these
adverse benefit determinations.  Cigna responds that courts have

held generally that a demand for reimbursement from a provider is not an adverse benefit determination.

An insurer or a plan administrator must meet notice and appeal requirements prior to issuing an adverse benefit determination.  See 29 U.S.C. §1133; 29 C.F.R. § 2560.503-1. The ERISA regulations define an "adverse benefit determination" as:

> a denial, reduction, or termination of, or a failure
> to provide or make payment (in whole or in part) for,
> a benefit, including any such denial, reduction,
> termination, or failure to provide or make payment
> that is based on a determination of a participant's or
> beneficiary's eligibility to participate in a plan,
> and including, with respect to group health plans, a
> denial, reduction, or termination of, or a failure to
> provide or make payment (in whole or in part) for, a
> benefit resulting from the application of any
> utilization review, as well as a failure to cover an
> item or service for which benefits are otherwise
> provided because it is determined to be experimental
> or investigational or not medically necessary or
> appropriate.

29 C.F.R. § 2560.503-1(m)(4).

In this case, Cigna is not withholding future payments to cover the overpayments, which some courts have held constitutes an "adverse benefit determination."  See, e.g., Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n, No. 09-C-5619, 2014 WL 1276585, at *13 (N.D. Ill. Mar. 28, 2014). Instead, Cigna seeks to recover directly the overpayments made to the surgical centers, which courts have held does not constitute an "adverse benefit determination."  See, e.g., Bench

Ruling at 47, <u>Conn. Gen. Life Ins. Co. v. Hous. Scheduling Servs., Inc.</u>, No. 3:12-cv-01456 (MPS) (D. Conn. July 16, 2013), Dkt. No. 86.

A review of the statutes and regulations on point demonstrates that Cigna's claim for reimbursement of overpayments is not an adverse benefit determination.  The court concludes, therefore, that neither ERISA nor the ERISA regulations require Cigna to comply with the notice and appeal process or exhaust administrative remedies prior to filing a lawsuit to recover overpayments.

## II.  State Law Claims

### A. CUTPA

The surgical centers argue that Cigna has failed to state a claim under CUTPA because "Cigna does not plausibly allege that defendants engaged in any trade or commerce in Connecticut." Specifically, the surgical centers argue that "the commercial relationship between defendants and their customers occurs exclusively in Texas, and the sole contact with Connecticut is based on the coincidence that the patients' Texas insurance policies are administered by a company headquartered in Connecticut."  Cigna responds that the surgical centers' actions constitute "trade or commerce occurring in Connecticut." Specifically, Cigna contends that "the thousands of fraudulent claims, related appeals, and other correspondence defendants

directed to Cigna in Connecticut" demonstrates sufficient contact with Connecticut to state a CUTPA claim.

The Connecticut Unfair Trade Practices Act provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  Conn. Gen. Stat. § 42-110a(4) defines "trade or commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value *in this state*."  Conn. Gen. Stat. § 42-110a(4) (emphasis added).  Further, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action" to recover actual damages, punitive damages, and any other equitable relief.  Conn. Gen. Stat. § 42-110g(a); Fabri v. United Techs. Int'l, Inc., 387 F.3d 109, 119 (2d Cir. 2004).

The court concludes that Cigna has failed to state a claim under CUTPA.  The "trade" or "commerce" complained about does not include conduct occurring in Connecticut.  Rather, the allegations levied against the surgical centers are based on their actions of inducing Cigna plan members to obtain treatment at their facilities in Texas and rendering medical services at

discounted rates to those plan members at the facilities in Texas.  While Cigna received fraudulent bills at its Connecticut headquarters, the alleged activity of the surgical centers that gives rise to a potential CUTPA claim does not fall within the purview of a plain language reading of § 42-110(b). Accordingly, Cigna has failed to state a claim under CUTPA.

### B. Fraud

The surgical centers argue that the amended complaint fails to plead fraud[2] with the particularity required by Rule 9(b). Cigna responds that the "detailed Amended Complaint easily satisfies this standard."

### i. False Representations

The surgical centers contend that "Cigna has failed to plead with any particularity that Defendants made false representations."  They argue that the amended complaint fails to explain how the surgical centers had any responsibility under the plans and how the surgical centers could know how much Cigna

---

[2] Neither party argues whether Connecticut law or Texas law applies to the state law fraud claim.  The elements of a fraud claim in Connecticut and Texas are nearly identical, however.  See Reville v. Reville, 312 Conn. 428, 441 (Conn. 2014) ("The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment."); Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001) (stating that to prevail on a fraud claim, a plaintiff must prove: 1) "a material representation that was false"; 2) the defendant "knew the representation as false or made it recklessly as a positive assertion without any knowledge of its truth"; 3) the defendant intended the plaintiff to act upon the representation; and 4) the plaintiff "actually and justifiably relied upon the representation and thereby suffered injury").

would reimburse per charge.  The surgical centers also contend
that Cigna relies on only "a handful of anecdotes to support its
sweeping accusations of fraud touching thousands of claims."

Cigna responds that the surgical centers were the assignees
under the plans and, therefore, were required to submit accurate
claims.  It responds further that the surgical centers
mischaracterize the fraud claim.  Finally, Cigna argues that the
exemplar claims provided in the complaint are sufficient for
demonstrating that the surgical centers submitted claims
inflated beyond the amounts disclosed to plan members.

Here, the amended complaint alleges that plan members
assigned their claims to the surgical centers, and therefore,
the terms of the plans, including the cost-share requirements,
applied to the surgical centers for reimbursement purposes.  The
amended complaint further alleges that the claims "contain
charges that do not reflect that Defendants waived patient cost-
share obligations."  The allegations center on the practice of
waiving cost-share requirements and then submitting charges to
Cigna for the full amount of the treatment.

Although Cigna reimburses out-of-network providers
according to the "maximum reimbursable charge," meaning that
Cigna will most likely not cover in full the amount billed, the
fraud alleged is that the surgical centers billed Cigna an
amount greater than the value they placed on their services.

The amended complaint does not allege that it is fraudulent for the surgical centers to bill amounts greater than the amount they expect to receive.  Instead, the fraud claim is grounded in the practice of submitting claims to Cigna without disclosing a waiver of cost-share requirements.  These allegations sufficiently state false representations with particularity.

The amended complaint also alleges with particularity that the claims "contain charges grossly in excess of the amounts quoted to patients."  The specific conduct alleged in the amended complaint——that the surgical centers provided patients with estimated charges for procedures and then billed Cigna for greater amounts——supports the exemplar claims provided.  It is too early in the litigation for Cigna to plead, without any discovery, the amounts that the surgical centers estimated each procedure would cost for every claim.

Taken together, the court concludes that the amended complaint states with particularity that the surgical centers made false statements to Cigna concerning the charges actually incurred and the amount each plan member paid.

### ii. Reliance

The surgical centers next argue that the amended complaint fails to state with particularity that Cigna relied on the false representations to its detriment.  They contend that "Cigna did not reimburse Defendants for medical services based on the rates

actually charged," as the plans sometimes limit reimbursement. The surgical centers also argue that Cigna fails to identify the claims that third-party vendors repriced.

Cigna responds that it "relied on Defendants' submitted charges as the starting point for determining reimbursement," as "the billed amount . . . set the ceiling on the amount Cigna would pay."  In addition, Cigna contends that "the billed amount is always relevant and material to Cigna's determination of the 'allowed amount,' even when the bill is subject to repricing."

Here, the amended complaint alleges that "Cigna's repayment obligation is limited to the 'Maximum Reimbursable Charge' (MRC) for Covered Expenses," which is "the lesser of (a) the provider's normal charge for a similar service . . . or (b) either a specified percentile of charges made by other providers of such services in the region or a specified percentile of the reimbursement rate that Medicare provides for such services in the same geographic area."  It further states that "Cigna has contracts with third-party vendors who negotiate with providers and facilities to reprice their out-of-network claims" and that the third-party vendors apply a ten to twenty percent discount rate to many of the claims submitted to Cigna.

The court concludes that the amended complaint alleges with particularity that Cigna relied on the false representations. Specifically, the amended complaint outlines a process in which

Cigna relied on the amount billed by the surgical centers to determine payments.  Regardless of whether the claims were repriced by third-party vendors or whether Cigna paid a percentage of the billed amount, Cigna relied on the billed amount as the starting point in calculating the payment.  These allegations are sufficient to establish reliance on the false representations with particularity.

### iii. Scienter

The surgical centers next argue that the amended complaint fails to plead scienter with particularity.  Specifically, they contend that the amended complaint is devoid of factual allegations from which the court could strongly infer fraudulent intent.  Cigna responds that the surgical centers "represented to Cigna that the charges on their claim forms were their actual charges even though they actually valued their services at far lower amounts and never intended to charge patients the amounts represented on their claim forms."

While scienter may be alleged generally, "pleadings with respect to scienter must still comply with the requirements of Rule 8(a)(2)."  Tatum v. Oberg, 650 F. Supp. 2d 185, 191 (D. Conn. 2009).  Rule 8(a)(2) requires more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Accordingly, the second circuit requires

plaintiffs to "allege facts that give rise to a strong inference of fraudulent intent," Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995)), which can be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness," id. at 290-91 (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)) (internal quotation marks omitted).

According to the amended complaint, the surgical centers promised its patients that it would waive their cost-share obligations and then billed Cigna for a "grossly inflated" amount. These allegations constitute strong circumstantial evidence of conscious behavior or recklessness.

### C. ERISA Preemption of State Law Claims

The surgical centers argue that ERISA expressly preempts the fraud claim and the tortious interference with contract claim,[3] as the claims "relate to" the ERISA plans and rely on

---

[3] Similar to the fraud claim discussed above in footnote 2, the parties do not argue whether Connecticut law or Texas law applies. The elements of the cause of action do not differ substantially between states. See Appleton v. Bd. of Educ. of Stonington, 757 A.2d 1059, 1063 (Conn. 2000) (requiring a plaintiff to establish: (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct"); Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000) (requiring a plaintiff to

plan terms to prove the claims.[4]  Cigna responds that "the
essence of Cigna's fraud claim is simply that defendants
deliberately misrepresented the value of their services with the
intent of inducing Cigna to make payments in excess of the
amounts truly owed" and that its fraud claim "does not even
tangentially rely on plan terms."  As to the tortious
interference with contract claim, Cigna responds that the
tortious interference claim is consistent with ERISA's core
purposes as it "helps to protect the relationship between Cigna
and its members, and the members' understanding of their plans."

Congress enacted ERISA to "protect . . . the interests of
participants in employee benefit plans and their beneficiaries
by setting out substantive regulatory requirements for employee
benefit plans."  Aetna Health Inc. v. Davila, 542 U.S. 200, 208
(2004).  To achieve a uniform regulatory regime over such plans,
ERISA "includes expansive pre-emption provisions, which are
intended to ensure that employee benefit plan regulation would
be 'exclusively a federal concern.'"  Id. (citation omitted)
(quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523
(1981)).

---

establish: "(1) an existing contract subject to interference, (2) a willful
and intentional act of interference with the contract, (3) that proximately
caused the plaintiff's injury, and (4) caused actual damages or loss").

[4] The surgical centers also argue that ERISA preempts the CUTPA claim.
Because the court concludes, however, that the amended complaint fails to
state a claim pursuant to CUTPA, the court does not address ERISA preemption
with respect to CUTPA.

Express preemption "occurs when 'Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision.'" Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238 (2d Cir. 2014) (alterations in original) (quoting Ariz. v. United States, 132 S. Ct. 2492, 2500-01 (2012)).  ERISA § 514(a) provides in relevant part that ERISA expressly preempts "any and all state law claims in so far as they may now or hereafter *relate to* any employment benefit plan."  29 U.S.C. § 1144(a) (emphasis added); see also Wurtz, 761 F.3d at 240 (recognizing that "ERISA expressly preempts any state law that 'relate[s] to any employee benefit plan'").  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 114 (2d Cir. 2008) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)).

The second circuit has recognized that "ERISA's nearly limitless 'relates to' language offers no meaningful guidelines to reviewing judges."  Gerosa v. Savasta & Co., 329 F.3d 317, 323 (2d Cir. 2003).  Therefore, courts should "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  N.Y. State Conference of Blue Cross

& Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656
(1995).  In doing so, the second circuit has recognized that
Congress did not intend "to foreclose every state action with a
conceivable effect upon ERISA plans."  Geller v. Cnty. Line Auto
Sales, Inc., 86 F.3d 18, 22 (2d Cir. 1996) (emphasis added).

     The court concludes that Cigna's state law claim of fraud
is not preempted by ERISA.  The claim centers on whether the
surgical centers intentionally misrepresented the value of their
services in order to induce Cigna into paying higher
reimbursement amounts.  The crux of the state fraud claim is the
surgical centers' alleged misconduct——the fraudulent billing
practices——and not the terms of the ERISA-governed plans.  The
specific terms of the plans are immaterial to resolving the
inquiry into the defendants' billing practices and whether the
defendants submitted claims reflecting the true amount of their
services.  Allowing Cigna to state a claim for fraud fits within
the objectives of ERISA despite any "conceivable effect" the
claim may have on the ERISA-governed plans.  Such a claim serves
to ensure the "honest administration of financially sound
plans," Gerosa v. Savasta & Co., 329 F.3d 317, 325 (2d Cir.
2003), and works to protect the interests of participants and
their beneficiaries in employee benefit plans.

     Unlike Cigna's state fraud claim, however, the tortious
interference with contract claim relies on a specific

interpretation of the plans' terms whether Connecticut law or Texas law applies.  For Cigna to maintain its tortious interference with contract claim, it would have to refer to the plan terms to prove, at least, 1) that plan members were contractually obligated to pay cost-share obligations, 2) that the plans' provisions required plan members to pay cost-share obligations, and 3) that Cigna would reimburse for medical services only upon satisfaction of the cost-share obligations. Accordingly, but for the explicit terms of the plans between Cigna and its plan members, Cigna could not state a claim for tortious interference with contractual relations without referring to the explicit terms of the plans between Cigna and its plan members.  The court concludes that ERISA expressly preempts Cigna's state tortious interference with contract claim.[5]

### D. Unjust Enrichment

Count four of the amended complaint alleges that "Defendants have been unjustly enriched as a result of their fraudulent billing practices."  It seeks restitution on behalf of the non-ERISA plans.

---

[5] The court notes that the motion to dismiss outlines a test from the Supreme Court concerning "complete preemption."  The surgical centers arguments for ERISA preemption, however, hinge entirely on "express preemption."  Although Cigna dedicates a portion of its memorandum of law to discussing complete preemption and the independent legal duties that the surgical centers allegedly breached, the movants failed to brief the issue.  Therefore, the court does not address "complete preemption."

The surgical centers move to dismiss the entire amended complaint, but fail to raise any argument for dismissing the unjust enrichment claim.  Although the memorandum of law argues that "all of Cigna's state law claims are preempted by ERISA," it is devoid of any argument with respect to unjust enrichment in particular.  Therefore, to the extent that the surgical centers argue that the unjust enrichment claim should be dismissed, the motion is DENIED.

**CONCLUSION**

Based upon the foregoing, the motion to dismiss (doc. no. 50) is GRANTED with respect to counts six and seven, and DENIED with respect to counts one, two, three, four, and five.

It is so ordered, this 31st day of August 2015, at Hartford, Connecticut.

                              /s/
                    _____
                    Alfred V. Covello,
                    United States District Judge